# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

HAMMEL J. CLARK,

    Plaintiff,

v.

BEVERLY McLAUGHLIN, RNP,
RUBUSTIANO BARRERA, M.D.,
MAHBOOB ASHRAF, M.D.,
STEPHEN D. RYAN, *Physical Therapist,* and
WEXFORD HEALTH SOURCES, INC.

    Defendants.

Civil Action No. TDC-18-0081

## MEMORANDUM OPINION

Plaintiff Hammel J. Clark, an inmate at the Western Correctional Institution ("WCI") in Cumberland, Maryland, has filed this civil rights action pursuant to 42 U.S.C. § 1983 against Beverly McLaughlin, RNP; Rubustiano Barrera, M.D.; Mahboob Ashraf, M.D.; Stephen D. Ryan, Physical Therapist; and Wexford Health Sources, Inc. ("Wexford"). Clark alleges that while he was incarcerated at WCI, he was denied constitutionally adequate medical care to treat his left shoulder rotator cuff tear. Defendant Stephen D. Ryan was not served with the Complaint. The remaining Defendants have filed a Motion to Dismiss or Alternatively for Summary Judgment. Having reviewed the briefs and submitted materials, the Court finds no hearing necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be granted.

## BACKGROUND

On March 22, 2016, Clark submitted a sick call request in which he complained of pain in his left shoulder which he attributed to a March 15 or 16 altercation with a correctional officer.

He was evaluated by Nurse Amy Booth on March 24, 2016 and was provided with a sling. He already had prescriptions for pain medications. On March 29, 2016, he filed another sick call request complaining that despite his March 24 medical visit, he was not able to raise his arm without pain and that hot water did not alleviate the pain.

On April 1, 2016, Clark, with his arm still in a sling, was evaluated by Defendant Beverly McLaughlin, a registered nurse practitioner, who noted that Clark remained in pain and had limited movement in his shoulder. She requested an x-ray of Clark's left shoulder. On April 3, 2016, Clark submitted a sick call request in which he inquired about the results of the shoulder x-ray and requested a magnetic resonance imaging test ("MRI") of his spine and shoulder. The x-ray was read on April 6, 2016 and showed "no evidence of an acute fracture, dislocation or subluxation." Defs.' Mem. Supp. Mot. Dismiss ("Mot. Dismiss") Ex. 2 at 3, ECF No. 14-4.

On April 6, 2016, Defendant Dr. Robustiano Barrera evaluated Clark and noted recurrent dislocation in his left shoulder. Dr. Barrera also noted that Clark's range of motion was diminished and referred him to the on-site orthopedist, Dr. Carls. Clark's prescriptions for painkillers were renewed. On April 10, 2016, Clark filed a sick call request because his shoulder was "pop[p]ing out" and was painful. Mot. Dismiss Ex. 1 at 7, ECF No. 14-3. On April 20, 2016, Dr. Barrera again submitted a request that Clark be seen by Dr. Carls.

On April 23, 2016, Clark filed another sick call request asking whether he could see a doctor again because his shoulder continued to ache and was stiff, was popping out, and was painful. Although medical personnel noted that the request for an orthopedic consultation had been placed, no further action was taken. On May 3, 2016, Clark again requested to see Dr. Barrera. On May 5, 2016, Dr. Barrera evaluated Clark again. Clark reported that his left shoulder would become dislocated when he tried to push himself off his wheelchair. He was advised to

have another x-ray to determine the type of dislocation and was referred for physical therapy. Later that day, Dr. Barrera decided that Clark should not use the sling in order to "prevent developing frozen shoulder." Pl.'s Opp'n Mot. Dismiss Ex. 4 at 9, ECF No. 17-8. The second x-ray was negative.

On May 6, 2016, Clark again filed a sick call request complaining of pain in his shoulder and that his shoulder continued to "pop out of place" even when he was sleeping. Mot. Dismiss Ex. 1 at 10. On May 17, 2016, Clark was evaluated by Defendant Stephen Ryan, a physical therapist. The goals for physical therapy were to decrease symptoms and improve elevation and strength. Clark returned for physical therapy on May 18, 2016.

On May 21, 2016, Clark filed another sick call request relating to continuing pain from the dislocation of his left shoulder. Although Clark was undergoing physical therapy, Clark asserted that such therapy caused pain and would not prevent his shoulder from popping out. Clark submitted additional sick call requests about his shoulder on May 27, 2016 and June 1, 2016. On June 1, Clark was examined by Nurse Dennis Martin, who noted that Clark was in compliance with his medication and physical therapy and that an orthopedic consultation request had been made on April 20, 2016. On June 2, 2019, Ryan noted modest improvements and recommended six more sessions of physical therapy.

On June 18, 2016, McLaughlin evaluated Clark and submitted a third request that Clark's left shoulder be evaluated by an orthopedist. The same day, Clark submitted a sick call request expressing concern about his shoulder and spine. On June 24, 2016, McLaughlin requested that Clark receive additional physical therapy for his left shoulder. A collegial review team of medical professionals denied the requested orthopedic consultation in favor of continuing physical therapy.

On July 5, 2016, Clark submitted a sick call request in which he sought an explanation for why the request for an orthopedic consultation was denied and requested an MRI. The next day, on July 6, McLaughlin evaluated Clark and encouraged him to complete the scheduled physical therapy first, then if his symptoms worsened or recurred, to return for reevaluation of the need for an orthopedic consultation. Clark continued with physical therapy throughout July and during early August 2016. On August 4, 2016, Ryan discharged Clark from physical therapy, concluding that the optimum benefit had been obtained even though Clark still had significant issues with his shoulder.

On that day, Clark filed another sick call request and complained that despite the physical therapy, he was unable to lift his arm above the level of his shoulder. On August 6, 2016, Clark was evaluated by Nurse Kristi Cortez. Clark reported his pain as seven on a scale of 1 to 10. Nurse Clark noted that he was continuing to receive Neurontin to relieve pain.

On August 16, 2016, Clark was evaluated by Krista Bilak, another registered nurse practitioner. Where the physical therapy had not improved Clark's shoulder, he could not lift his arm above shoulder level, and his shoulder continued to dislocate, Bilak submitted a request for an MRI of Clark's left shoulder. On September 7, 2016, Clark submitted a sick call slip asking to see a doctor other than Defendant Dr. Mahboob Ashraf. Dr. Ashraf then met with Clark to address his concerns. Clark submitted additional sick call requests on September 18, 2016 and October 11, 2016 complaining about his shoulder pain and asking about the delay in his receiving the requested MRI.

On November 2, 2016, Clark underwent the MRI, which showed arthritic changes of the glenohumeral joint, a narrowing of the joint space, chondromalacia, joint margin osteophytes, and subarticular cystic changes at the glenoid. The MRI further revealed that Clark's glenoid labrum

was degenerated and there was mild AC joint arthropathy. However, there was no swelling in the joint, the long head of the bicep tendon was in a normal position, and the rotator cuff was intact. Clark was provided with the MRI results on November 28, 2016.

On November 28, 2016, Dr. Barrera again requested that Clark receive an orthopedic consultation, specifically, a video consultation with orthopedic surgeon Dr. Ashok Krishnaswamy. On February 28, 2017, Dr. Krishnaswamy evaluated Clark and noted that Clark exhibited tenderness and swelling in his left shoulder and was restricted in the movement of his shoulder. Based on the MRI, Dr. Krishnaswamy believed that Clark had moderate arthritis of the left shoulder. Based on his examination, he believed that Clark had a left rotator cuff tear that would require an arthroscopy and, if the rotator cuff were found to be torn, surgery. He requested another x-ray. The x-ray, which was taken on March 2, 2017, revealed "mild degenerative changes in shoulder joint [with] no evidence of an acute fracture, dislocation or subluxation," and "[n]o acute osseous abnormality." Mot. Dismiss Ex. 2 at 7.

Based on Dr. Krishnaswamy's review, Dr. Muluget Akal had requested that Clark receive a left shoulder arthroscopy. On April 21, 2017, Clark again complained about his shoulder pain and that it continued to pop out of place. On April 25, 2017, Dr. Ashraf submitted a second request for a left shoulder arthroscopy. On May 23, 2017, Clark underwent arthroscopic surgery. As part of this procedure, Clark's rotator cuff was repaired. On May 25, 2017, Dr. Barrera requested that Clark undergo post-surgical physical therapy and receive a post-surgical consultation with Dr. Krishnaswamy.

On June 18, 2017, Clark filed a sick call request inquiring why he had not yet had the post-surgical consultation. The following day, Clark submitted a sick call request reporting that his surgical incision had not healed yet and claimed that the staple out had been removed too early.

5

On July 20, 2017, McLaughlin submitted a request for Clark to continue physical therapy. On August 1, 2017, Clark was seen by Dr. Krishnaswamy for the post-surgical consultation. Dr. Krishnaswamy concluded that the surgical site had healed well and that Clark's physical therapy was proceeding well and should be continued for another four weeks, with a follow-up visit in 6-8 weeks.

On December 12, 2017, Clark underwent another x-ray, which revealed no evidence of an acute fracture, dislocation, or subluxation, that the glenohumeral and AC joints were grossly intact, that there was no acute osseous abnormality, and that there were mild degenerative changes.

According to Dr. Asresahegn Getachew, the Acting Medical Director at WCI and North Branch Correctional Institution ("NBCI"), the x-rays and MRI did not reveal that Clark had a torn rotator cuff or otherwise required surgical repair of his left shoulder. In his view, it was only after Dr. Krishnaswarmy's orthopedic consultation on February 28, 2017 that a rotator cuff tear was suspected, and the tear was not confirmed until the arthroscopic surgery on May 23, 2017.

## DISCUSSION

In his Complaint, Clark alleges that Defendants violated his rights under the Eighth Amendment to the United States Constitution because they were deliberately indifferent to a serious medical need, specifically, the injury to his left shoulder. In his briefing in opposition to Defendants' Motion, Clark alleges for the first time that he has been retaliated against by medical staff in that his prescriptions for medication were improperly managed. Such claims raised for the first time in briefing on a dispositive motion cannot constitute a proper amendment of the Complaint and therefore will not be considered. *See Morgan Distributing Co., Inc. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) ("[I]t is axiomatic that a complaint may not be amended

6

by the briefs in opposition to a motion to dismiss."); *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984).

I.  **Preliminary Motions**

Clark has filed several non-dispositive motions, including several relating to the briefing on Defendants' Motion to Dismiss or Alternatively for Summary Judgment.

First, after the Court entered an order directing Clark to pay $10.30 as an initial partial filing fee. Clark filed a Motion to Waive the Filing Fee in which he asks for the filing fee to be waived because he has been transferred between facilities in September 2018 and did not at that time have a job within the prison. Although Clark has qualified for *in forma pauperis* status, he has not provided grounds that distinguish him from other indigent plaintiffs that would justify waiving the filing fee in this case. The Motion will be denied.

Second, Clark has filed a Motion for Appointment Counsel. "The court may request an attorney to represent any person" proceeding *in forma pauperis* who is "unable to afford counsel." 28 U.S.C. § 1915(e)(1) (2012). In civil actions, the Court appoints counsel only in exceptional circumstances. *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975). In doing so, the Court considers "the type and complexity of the case," whether the plaintiff has a colorable claim, and the plaintiff's ability to prosecute the claim. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984) (citations omitted), *abrogated on other grounds by Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989). Exceptional circumstances include a litigant who "is barely able to read or write," *id.* at 162, or clearly "has a colorable claim but lacks the capacity to present it," *Berry v. Gutierrez*, 587 F. Supp. 2d 717, 723 (E.D. Va. 2008); *see also Altevogt v. Kirwan*, No. WDQ-11-1061, 2012 WL 135283, at *2 (D. Md. Jan. 13, 2012). Inherent in this analysis is that one's indigence is insufficient to establish exceptional circumstances. Here, Clark's proffered

reasons do not show exceptional circumstances or a particular need that would require the immediate assistance of an attorney. Clark's claim is not unduly complicated, and he has been able to articulate his claims without difficulty. Because there are no exceptional circumstances warranting the appointment of counsel, the Motion will be denied.

Third, after filing his brief in opposition to Defendants' Motion, Clark filed a Motion to Amend his response, which seeks to supplement his memorandum in opposition to the Motion. Here, in opposing Defendants' Motion, Clark circumvented the Court's page requirements by filing a 35-page "Plaintiff's Motion to Dismiss or in the Alternative for Summary Judgment" accompanied by a 21-page memorandum of law, all of which was construed as Clark's memorandum in opposition to Defendants' Motion. Having already had ample opportunity to oppose the Motion, Clark has not provided a basis to justify permitting additional briefing. Although Clark is self-represented, he has filed numerous cases in this Court and thus cannot justifiably claim to lack an understanding of the Court's briefing rules. The Motion to Amend will therefore be denied.

Finally, Clark has filed a Motion for Leave to File a Surreply. Under Local Rule 105.2, surreply briefs are not permitted absent leave of the Court. Having fully briefed the matter, and having already filed a supplemental brief, Clark provides no persuasive explanation of the need for a surreply. The Motion for Leave to File a Surreply will therefore be denied.

## II. Motion to Dismiss or, in the Alternative, Motion for Summary Judgment

In their Motion, Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6) or summary judgment under Rule 56. In support of their Motion, Defendants argue that (1) Clark has not properly alleged or established that Defendants were deliberately indifferent to a serious

medical need; (2) Clark cannot demonstrate that Wexford is liable under a theory of supervisory liability under § 1983; and (3) Defendants are entitled to qualified immunity.

### A. Legal Standards

When deciding a motion to dismiss under Rule 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defense v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). To the extent that grounds for dismissal are based solely on the contents of the Complaint, the Court may dismiss under Rule 12(b)(6) if the complaint does not allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Rule 12(d) requires courts to treat a Rule 12(b)(6) motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some indication that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment, and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery"

to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted). Here, the notice requirement has been satisfied by the title of the Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d) explaining why "for specified reasons, it cannot present facts essential to justify its opposition," Fed. R. Civ. P. 56(d), or otherwise put the district court on notice of the reasons why summary judgment is premature. *See Harrods, Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244-45 (4th Cir. 2002). Here, although Clark has filed a document described as a Rule 56(d) affidavit, that filing does not offer any persuasive argument for discovery. Rather, that filing, as well as all of his other submissions, provide facts and evidence in support of his position that based on the record before the Court, Defendants' Motion should be denied. Indeed, in opposing the Motion, Clark has explicitly argued that summary judgment should be granted in his favor. Under these circumstances, the Court will construe Defendants' Motion as a Motion for Summary Judgment.

Under Federal Rule of Civil Procedure 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine"

if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

### B. Deliberate Indifference

In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

Objectively, the medical condition at issue must be serious. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A medical condition is serious when it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (citation omitted). As for the subjective component, "[a]n official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively knows of and disregards an excessive risk to inmate health or safety." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Farmer*, 511 U.S. at 837). "[I]t is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id.* (citations omitted). "[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Id.* Thus, "[d]eliberate indifference is more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (internal alterations omitted). Under this standard, a mere disagreement between an inmate and a physician over the appropriate level of

11

care does not establish an Eighth Amendment violation absent exceptional circumstances. *Id.* Moreover, if the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *See Farmer*, 511 U.S. at 844.

Here, viewing the facts in the light most favorable to Clark, he had a serious shoulder injury that caused significant pain, which could constitute an objectively serious medical condition. *See Iko*, 535 F.3d at 241. However, the record evidence demonstrates that Clark received regular care for his shoulder injury. After he sought medical attention on March 22, 2016 for the injury to his shoulder, medical personnel examined him, provided a sling, and ordered an x-ray within the first two weeks. He already had valid prescriptions for pain medication. The x-ray did not reveal any fracture or dislocation, but in light of Clark's continuing complaints of pain and limited range of motion, Dr. Barrera referred Clark to an orthopedist. On May 5, 2016, when Clark's condition was not improving, Dr. Barrera referred Clark to physical therapy, which he received throughout May, June, and July 2016. During this time period, in June 2016, the request for an orthopedic consultation was considered but not approved by a collegial review team in favor of the physical therapy. When the physical therapy did not resolve Clark's pain, medical staff requested an MRI. The MRI, taken on November 2, 2016, did not reveal a rotator cuff tear, but it revealed enough cause for concern that Dr. Barrera again requested an orthopedic consultation. When the orthopedist, Dr. Krishnaswarmy, examined Clark in February 2017, he ordered additional x-rays, suspected a rotator cuff tear, and recommended that Clark undergo arthroscopic surgery on his left shoulder. When Clark had the arthroscopy on May 23, 2017, Dr. Krishnaswamy observed a torn rotator cuff and repaired it.

Based on the evidence reflected in the objective medical records, Clark cannot establish that Defendants exhibited deliberative indifference to Clark's medical needs in that any of them subjectively disregarded an excessive risk to his health. *See Jackson v*, 775 F.3d at 178. Clark received immediate attention, within days of his first sick call request, and over a 14-month period had his shoulder examined by medical personnel at least 15 times, received a sling, pain medication, x-rays on three occasions, numerous physical therapy sessions, an MRI, and ultimately, arthroscopic surgery. Although there were gaps between the various stages of treatment that may have been longer than ideal, the consistent series of examinations and consultations relating to his shoulder belies any claim that delays in providing the various forms of testing and treatment constituted deliberate indifference. The fact that Clark did not receive an orthopedic consultation for several months was the result not of action or inaction by Defendants—indeed, Dr. Barrera specifically recommended such a consultation in April 2016—but of a decision by a collegial review team to focus on physical therapy first. To the extent that, in hindsight, such a consultation should have been provided earlier, that decision constitutes a disagreement on the proper course of treatment that does not constitute deliberate indifference. *See Scinto*, 841 F.3d at 225. There is no evidence that the various decisions were made for the "purpose of causing harm or with knowledge that harm will result." *Id.* Once physical therapy failed to resolve Clark's pain, and the orthopedic consultation identified a possible rotator cuff tear, Clark received arthroscopic surgery to address it.

Clark's claim that the MRI actually showed that he had a torn rotator cuff, and that Defendants manipulated the results of the MRI, does not alter this conclusion. The MRI report clearly stated that Clark's rotator cuff was intact. According to Dr. Krishnaswamy, he suspected a torn rotator cuff based on his examination of Clark, not the MRI report, and then recommended

13

arthroscopy of the left shoulder "with possible mini open rotator cuff repair *if it is torn.*" Mot. Dismiss Ex. 4 at 2, ECF No. 14-6 (emphasis added). In light of the unambiguous statement on the face of the MRI report, prepared by a different doctor, the fact that Dr. Krishnaswamy's surgical notes appear to state that the MRI showed a torn rotator cuff appears to be an error.

Even if the question of whether the MRI report actually referenced such damage to the rotator cuff could be deemed a dispute of fact, it was not a genuine dispute of material fact because its resolution in favor of Clark would not establish deliberate indifference. The MRI was conducted in November 2016. Up to that point, the earlier diagnostic tests, consisting of x-rays, had not revealed such damage. Following the MRI, Dr. Barrera promptly requested an orthopedic consultation for Clark, which in turn resulted in Dr. Krishnaswarmy's recommendation for arthroscopic surgery. Thus, regardless of the specific content of the MRI report, Dr. Barrera's response to the MRI served to advance, rather than undermine, Clark's care in a manner that directly led to the repair of the rotator cuff. None of the other Defendants took any action or inaction following the MRI that could be interpreted as detrimental to Clark's health. And whether based on the MRI report or his own examination, Dr. Krishnaswarmy, following his orthopedic consultation, recommended arthroscopic surgery to address a possible rotator cuff tear. In light of this sequence of events, Clark's conclusory allegations that Defendants lied about his condition are entirely unsupported by the evidence.

On this record, the Court concludes that there is no genuine issue of material fact whether Defendants acted with deliberate indifference to a serious medical need. The Court will therefore grant Defendants summary judgment on Clark's Eighth Amendment claim relating to allegedly inadequate medical care. Accordingly, the Court need not address Defendants' remaining arguments.

## CONCLUSION

For the foregoing reasons, Clark's Motion to Waive the Filing Fee, Motion to Amend, Motion for Appointment of Counsel, and Motion for Leave to File are Surreply will be DENIED. Defendants' Motion to Dismiss or Alternatively for Summary Judgment, will be GRANTED. A separate Order shall issue.

Date: August 29, 2019

THEODORE D. CHUANG
United States District Judge